IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| KING GEORGE COUNTY, VIRGINIA, ) <br> a political subdivision of the ) <br> Commonwealth of Virginia, ) <br> 10459 Courthouse Drive ) <br> King George, VA  22485 ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> ERIC HOLDER, ) <br> Attorney General of the ) <br> United States of America; ) <br> THOMAS E. PEREZ, ) <br> Assistant Attorney General, ) <br> Civil Rights Division, United States ) <br> Department of Justice, Washington, DC, ) <br> ) <br>     Defendants. ) | <br><br><br><br><br><br><br><br><br>Civil Action No. _____<br><br><br><br><br><br>Three-Judge Court Requested |

## COMPLAINT

King George County, Virginia, alleges that:

1.  This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2.  Plaintiff King George County ("the County") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).  The County is located on the Northern Neck Peninsula and is bounded on the north by the Potomac River and on the south by the Rappahannock River.

3. There are two elected governmental units within the meaning of 42 U.S.C. § 1973b(a)(1) that exist within King George County: The King George County Board of Supervisors and the King George County School Board.

4. The King George County Board of Supervisors is the governing body that formulates policies for the administration of government in King George County. It is comprised of five supervisors; four are elected from four single-member districts and one elected at-large; to serve four-year staggered terms.

5. The King George County School Board governs the King George County school system. The King George County School Board is a five member body elected from four single member districts and one at-large. Terms of office are four years and are staggered such that at least two members are elected every two years.

6. According to the 2010 Census, King George County has a total population of 23, 584, of which 18,089 (76.7%) are white, 4214 (17.9%) are black, 7900 (3.3%) are Hispanic, 274 (1.2%) are Asian, and 122 (0.5%) are Native American. The County's total voting age population is 17,044, of which 13,452 (78.9%) are Non-Hispanic White, 3124 (18.3%) are Non-Hispanic Black, 468 (2.7%) are Hispanic.

7. King George County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

8. Like other jurisdictions in the Commonwealth of Virginia, the County

does not collect or maintain voter registration data by race. Current data show that a significant portion of the County's voting age population is registered to vote. As of November 2010, the County had 13,930 registered voters, or 81.7% of the County's 2010 Census voting age population (VAP). The number of persons in the County that is registered to vote has risen over the last decade. In 2000, there were 8026 registered voters. In 2010, the number had grown to 13,930, an increase of 73.6%.

9. One African-American candidate has been elected to the King George County Board of Supervisors since at least 1992. African-Americans have also been elected to the King George County School Board, with two African Americans serving on the school board in the early 1990's and one African-American serving on the school board from the early 1990's to 2005.

10. Voter turnout in elections within King George County (*i.e.* the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the presidential election years of 2004 and 2008, for example, voter turnout (as a percent of the registered voters) was 76.2% in 2004 and 73.9% in 2008. Turnout for the last two elections for local offices (county board of supervisors and school board) held in November 2007 and 2009 (when the Governor's race was also on the ballot) was 36.8% in 2007 and 33.4% in 2009.

11. As a political subdivision of the Commonwealth of Virginia, plaintiff King George County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including King George County, are required to seek and obtain preclearance from either

this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

12. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act. This exemption process is known as "bailout".

13. In 1982, Congress made changes in the exemption standards of the Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;
> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

14. As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

4

      A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;

      B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and

      C) Expanded opportunities for convenient registration and voting exist within the State or political subdivision.

15. As described in each of the paragraphs set forth below, King George County has fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 13 and 14, *supra*.

16. Since 1980, the King George County and the County School Board have made 41 submissions to the Attorney General seeking preclearance of voting changes pursuant to Section 5 of the Voting Rights Act. These submissions include the 2011 redistricting plans for the Board of Supervisors and the School Board. All of these submissions have been precleared by the Attorney General.

17. Over the preceding ten years, the County has engaged in a variety of constructive efforts, including efforts to expand the opportunity for registration and voting, such as providing opportunities to register to vote through a variety of offices and through the mail, conducting voter registration outreach to high school seniors, and appointing minority elections and poll officials. Twice a year, in the Fall and Spring, the County registers high school students. The County's Voting Registrar also provides guidance to several civic organizations that hold voter registration drives throughout the county. Most of the County's voters register at the Offices of the Division of Motor Vehicles. The County also receives voter registration applications from the County's Social Services, as well as at the County Registrar's office.

18. King George County has a three-member Electoral Board, appointed pursuant to Virginia state law. The King George County Registrar of Voters and the King George County Electoral Board are primarily responsible for all election-related functions, including voter registration, list maintenance, voter outreach, conduct of elections, and the selection of polling sites and poll workers. An African-American was appointed to the County Electoral Board from 1985 to 2005, and from 2009 to the present.

19. On Election Day, the County uses five polling places and a central absentee precinct, where King George County voters may vote absentee. All five polling places are accessible to those with physical disabilities.

20. In the November 2010 election, 11 (22.4%) of King George County's 49 poll workers were minority group members (nine African Americans, one Latino and one Asian American). The percentage of appointed minority poll workers (22.4%) exceeds the percentage of minorities in the County's 2010 voting age population (17.9%).

21. During the ten years preceding the filing of this action, no person in the King George County has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

22. During the ten years preceding the filing of this action, no "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in the King George County as a prerequisite to either registering or voting.

23. During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of the County. Further, no consent decree,

settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds. No action is presently pending alleging such denials or abridgements of the right to vote.

24. During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the County or School District to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objections or denials have occurred.

25. During the ten years preceding the filing of this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the County or the County School Board for administrative review under Section 5 of the Voting Rights Act. Nor has any declaratory judgment been denied under Section 5 of the Act by or on behalf of the County or County School Board. No administrative submissions or declaratory judgment actions under Section 5 on behalf of the County or County School Board are now pending.

26. The King George County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in the County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors or to the County School Board.

27. Federal examiners have never been appointed or assigned to the County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

28. There are no known incidents in the County where any person exercising his or her right to vote has been intimidated or harassed at the polls (or while attempting

7

to register to vote).

29. The allegations set forth in paragraphs 16 through 28, above, if established, entitle King George County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the County and all governmental units within the County from the special remedial provisions of the Voting Rights Act.

30. Pursuant to 42 U.S.C. §1973b, the County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices."   The County publicized the intended commencement of this action by placing advertisements in the local newspaper and posting notice of bailout at County offices, including the Voter Registrar's office, the County's Department of Social Services, and the County Courthouse.

WHEREFORE, plaintiff King George County respectfully prays that this Court:

A.  Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B.  Enter a declaratory judgment that the King George County is entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C.  Grant such other relief as may be necessary and proper as the needs of justice may require.

**For the Plaintiff KING GEORGE COUNTY:**

_____
**J. GERALD HEBERT**
D.C. Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, Va. 22304
Tel (703) 628-4673